My name is Chris Weinman. I'm here on behalf of Sallie Mae, appellant and appellee in this case. I have not prepared 20 full minutes of language for you. I have tried to reduce this case to what I think are three key principles. I think at first blush, as I was reviewing this over the last few days, I thought there are 20 issues, and they're very complex and confusing. You're thinking the BAT was wrong on its conclusion that payment should be applied to principal first and not post-petition interest. That is correct. Your argument seems pretty strong to me, but the BAT knows more about bankruptcy than we do, so you better lay it out really clearly and concretely. Well, that, you know, that, your point there makes a lot of sense. I think it's worth noting that we didn't brief it before the BAT. I didn't know that it was going to be an issue. And frankly, their holding as to the application of payments may be construed as dicta, but it's very important to the student loan creditors throughout. There are lots and lots of student loans in Chapter 13 bankruptcies, which is why we're addressing it here. I believe that if we had had a chance to fully brief it before the BAT, perhaps the result may have been different. Well, what do you mean didn't have a chance? How did it come about that they decided it? Well, we didn't realize it was that issue. We talked all about the underlying cases of REP and annually and Pardee and whether you could discharge a student loan through a Chapter 13, but we didn't talk about the application of payments. And perhaps it was our fault for not thinking through it. Let me just ask you a question so I understand the significance. If you apply the funds to principal first, then you have larger accrued interest at the start and lower principal. But, you know, why does that make an economic difference? Is the nature of the loan document one where the interest only accumulates on principal and not on the prior interest? If you had interest on interest, I don't think it would make any difference. You don't have interest on interest. So that's really why. Simple interest. Yeah. It isn't compounding. Except in certain cases where under the note the guarantors or the creditors are actually allowed to capitalize interest. But that isn't the usual procedure. It's generally simple interest. Okay. Now I understand the significance of it. So what was your argument as to why what the BAP said was wrong? All right. So, again, I've tried to reduce it to three principles that are somewhat macro level, but also I think could address all of the smaller issues, more granular issues. The first principle is that student loan debt is nondischargeable in bankruptcy, absent an adversary proceeding to establish undue hardship. It simply is nondischargeable in bankruptcy without an adversary proceeding, period. The principle is clear from the bankruptcy code on its face, Section 523A8, which says as much, and it's clear from some of the leading cases, annually, banks from the Fourth Circuit, and rep from the BAP. There are many other cases, and I think it's become almost unanimous across the country that student loan debt cannot be discharged without an adversary proceeding to discharge it. That's the first principle. The second one is that debt, and in particular student loan debt, encompasses all of the obligations of the borrower to the lender under the note. So debt isn't just principle. It's not just interest. It's also fees and the mechanics of payment under the note. It's the obligations of the borrower to the lender under the note. A corollary is that part and parcel of the debt is the procedure, as I just said, prescribed in the promissory note that the lender takes when it applies payments. Pardee is probably the most applicable case, which I know you're familiar with, where the Court addressed that, and it said the vast weight of authority suggests that the debt is the debt and the whole of the debt is nondischargeable in bankruptcy. The third principle is that a claim against the bankruptcy state, which is usually embodied in a proof of claim but need not be necessarily, and it's a claim against the bankruptcy estate, is not necessarily coextensive with the underlying debt. That is, a claim against the bankruptcy estate is fundamentally different from a debt owed by a debtor to a lender. And that's because the claim can only evidence current debt? It's because you need two different concepts to address all of the issues that arise, really. A claim is a claim against a bankruptcy estate, and it really has one purpose, and that is to determine how much money the bankruptcy estate is going to pay the creditor. So you're looking at the picture of the bankrupt on the day of his filing for bankruptcy. That's right. That's what you're allowed to put on your proof of claim, and that establishes your claim against the bankruptcy estate. You can't claim today what is owed by today. That's right. I must be missing something. I had thought, I think along the same lines as Judge Fletcher, that this did not require much conceptual apparatus, actually. All you can claim is what you wrote on the day of the filing for bankruptcy. You cannot claim interest after the petition because that comes after the day when the petition was filed. That's absolutely true. I thought that was all there was to it. Is there more? But you need a mechanism for following the debt because the debt is non-dischargeable. So a student loan. Since it's non-dischargeable. Right. The interest continues to pile up until the note is paid. Exactly. Exactly. I feel like I'm missing some complication here. It's not that complicated. Where it becomes complicated. Is it any more than what I've said? I mean, what I've said is my simple understanding. And what you've said sounds a lot more complicated, and I don't understand how it's different. I don't know. I was trying to simplify it. Well, I guess the problem is, the question is, the plan says that she's going to be discharging, in effect, part of the debt. And so, theoretically, you got notice of it, and you didn't object. So have you now waived that argument and agreed that even though it's even illegal, it's still binding? I guess that's where the issue is. Yes. I mean, I think that's the cross-appeal, right? I'm sorry. That is the cross-appeal by the debtor. It is. It is. But I think it also You lose if you can't win that.  I lose if I can't win that. But I think that's almost, there is a cross-appeal by the debtor, but it's very clear under Rep, which is the BAP, and under annually, that that's, that you cannot discharge a nondischargeable debt that requires an adversary proceeding through a Chapter 13 plan. That's what Rep says, and it's a well-reasoned opinion. That's what their courts are now following banks. The Fourth Circuit case, Rep followed the banks' authority exactly. I was taking that a step further and saying, in addition to the cross-appeal, we can also address my appeal, which has to do with not just whether you can discharge interest or the debt through a Chapter 13 plan, but whether you can affect the application of payments through the plan as well. And my point is, the debt is the debt. It encapsulates all of those concepts, and you can't do it through a Chapter 13 plan. Saying the debt that can't be discharged includes the terms of payment. Yeah. So that the payments are due as the proceeding marches along. They're stayed. They're stayed. Well, technically what happens is, under the Department of Education regulations, a bankruptcy costs an automatic forbearance, meaning the lender doesn't collect anymore. The automatic stay also prevents collection, and the debtor goes into a state of forbearance where interest continues to accrue. Any payments that come in are paid under the terms of the note. They're applied to interest first and then principal. It's all in accordance with the term of the note. I mean, the bankruptcy affects the mechanics of payment or how they're applied. It certainly affects the collectability because there's an automatic stay. Is it generally the case that the promisee of a non-dischargeable debt can ignore a plan that's filed and of which they're given notice, or is that special for student loans? Your Honor, I don't know the answer. I know that the majority of the cases that have addressed it are in the student loan context, just much more heavily litigated. I mean, the other cases would be tax and marital obligations. Fraud, all kinds of stuff. I don't know. Well, it wouldn't be as simple as fraud. Student loans and taxes are the ones where there's a clear debt that's clearly non-dischargeable, and I don't know of any in the tax context. Is this different because there is a way in which the student, LEND, or the LEND can discharge the debt by showing hardship? Is that what makes this different? And so they've got to go to the adversary proceeding? Actually, thank you for thinking of that. I think that does make it different because there is an avenue for discharge. There's one avenue for discharge of student loan debt, and that's it. Well, maybe I'm thinking of something I shouldn't have been thinking about. I think the way you put it, Your Honor, is a correct statement, but it doesn't get to what seems to be perhaps the BAPS position and what the debtor's position is, and that is that there is something about the claim and the claim process which prohibits the application of payments to interest before principle. And for the life of me, I can't see where that actually arises. A claim cannot include post-petition interest, but we know that interest accrues post-petition, and there's nothing that prohibits the application of payments to post-petition interest. All we know is that a claim can't include it. Why did payments ñ how did the payments come in here? They're paid to the trustee. But it couldn't have been ñ you couldn't have enforced payment while the petition was pending, right? No. It was stayed. Yes, yes. The payments ñ Voluntary payments, then? They're voluntary payments through a Chapter 13 plan. It's ñ they're voluntary payments, and ñ So the payments that were made were part of the plan, which said no interest, but as a matter of law, you think that the payments had to go to interest? I think that regardless of what the plan said, my client would have applied the payments as the promissory note prescribed to interest first and then principle, regardless of what the size of the payments were, regardless of what the plan said. I think that what happens after the bankruptcy is over and the debtor receives its discharge, the plan has nothing to do with that. The only thing that is going to affect the debt is the payments that my client actually received. The payments may reduce the claim amount. It may ñ they're payments pursuant to a plan, but they aren't going to actually change the nature or the amount of the debt except to the extent the payments are received. A case that I think I may not have focused on as much as I could have is the case of Bell, and it's not in the Ninth Circuit. It's cited in my brief. In that case, it's ñ I think it emphasizes the distinction between a claim and a debt because in that case, the claim amount was reduced at the outset of the bankruptcy by the bankruptcy court, and at the end of the ñ end of the Chapter 13 bankruptcy, the bankruptcy court said, yes, the claim amount was reduced, but that didn't affect the size of the underlying debt. The debt remains. To the extent it was paid through the bankruptcy estate, the debt is reduced, but the debt and the interest remain. I think ñ I think unless ñ unless Your Honors have further questions, I'd like to reserve my time to respond. Thank you, counsel. Good afternoon, Your Honor. May it please the Court. John Hug on behalf of the debtor in this case. I guess I would like to start by simply addressing the points just recently made and why they are incorrect. It's very simple. I can explain first of all as to what's supposed to happen and explain what did happen, and then hopefully that will make it clear as to how it's incorrect. Now, what is supposed to happen is you have a Chapter 13 plan that is filed and confirmed, and hopefully you're going to do all of the things necessary to achieve due process, which we'll get to when I discuss the cross-appeal. And then at that point, the plan says we will make certain payments to certain creditors and only allowed claims are going to be paid. 502B says you cannot make a claim as a creditor for unmatured interest. Rule ñ Bankruptcy Rule 3021 says in order to get paid on a claim, it has to be allowed. Well, if you're not allowed to even file a claim for unmatured accruing post-petition interest, you certainly can't get paid on it. Now, what happened here? Wait a minute. Are you saying that if I owe $100,000, I can stop the interest from running on it by filing for bankruptcy because the creditor cannot claim for any interest after my filing? So he can never collect on that interest? It depends. To answer that question is it does depend on the debt. If it is a secured debt, then interest will continue to accrue and you won't need to pay principal and interest. If it's a real estate mortgage, that mortgage payment, if you want to keep the property, you must make the actual payment through the bankruptcy or either outside the bankruptcy. In the case of a secured car loan, the interest would continue to accrue and that would generally be paid through the plan principal and interest as well. With general unsecured debts, interest stops accruing, period, end of story. What does it say there? Well, I think that's right, but the question is when you've got a debt that you can't discharge, whether the rule is different. And thank you for making that point because the difference here between just a general unsecured debt and a loan debt is because it is non-dischargeable, interest continues to accrue solely because of its non-dischargeable nature. It accrues and is capitalized outside the bankruptcy against the debtor during the pendency of the plan. And the payments that are coming from the Chapter 13 trustee are to be made against the allowed claim, which is the balance at the beginning, as you had mentioned earlier, the balance at the beginning, in this case $36,900 and some odd dollars, and all the plan payments were to go to reduce that principal balance. And what is supposed to happen generally is the interest continues to accrue and you can still, that being Sallie Mae, when the bankruptcy is over and the discharge is received on all the other debts, Sallie Mae can then go forward and collect on the remaining principal balance plus all of the accrued interest that accrued outside the bankruptcy for the five-year period of the plan. Wonderful situation for the debtor, certainly, because they do get hit with the bigger bill, but that's the situation that we have right now. Now, what happened in this case, of course, is that it would appear that payments that were supposed to be applied only on the allowed claim, which is only the principal amount, the $36,000 amount by the outset, were then applied to interest first. So that allows a claim for unmatured interest, and this is accruing interest after the bankruptcy had been filed. That allows, in effect, a claim for unmatured interest, which 502 prohibits, and Section 362, which is the automatic stay provision of the Bankruptcy Code, prohibits collection of these amounts outside the debt, outside of the bankruptcy. So Sallie Mae wasn't allowed to do what it did, pursuant to Section 502B2 of the Code. But why isn't a student loan different? Because you do have an avenue to discharge the debt by filing an adversary claim and claiming hardship. A student loan different from what? From other non-dischargeable debts, for example, fraud. Well, it is. How is it different from another non-dischargeable debt? Because there is an avenue. It's semi-dischargeable, let's say, because you can go in and show hardship. You can go in and show hardship. You can make an attempt to show hardship, but that's not really addressing the payment issue with regard to how the payments were applied. I don't think it's any different than any other non-dischargeable debt. Clearly it is different than general unsecured debts, which are dischargeable. We don't generally allow any type of a modification to a student loan debt. I guess actually we don't allow anybody to get out from under it, basically, no matter what happens. So as I explained, I explained kind of what's supposed to happen, I explained what did happen, and why, pursuant to which portions of the Code, they're not permitted to actually do what they did. It does allow a claim for unmatured. I mean, what they were doing would be to, in effect, allow a claim for unmatured interest, which is clearly prohibited. You take funds that are allocated. Well, no, I don't think so. They're saying they did not make a claim for post-petition interest because they're not allowed to make a claim for post-petition interest. On your argument that post-petition payments should be applied first to principal, you cited this reg at 34 CFR, I think it's 682.209, subsection B1. The subsection B1 is the critical one. Okay. And you cited it to us, I think. It looks to me as though that reg says that when a payment is made, it's supposed to go first to late charges and collection costs, second to outstanding interest, and third to outstanding principal. So when I put the two together, it looks like post-petition interest is just not the subject of a claim, and when a payment is made, it gets applied to interest first, and it seems to dispose of it. Okay. Why not? I have two ways to respond to that. First of all, as I read the Department of Education regulations, there's two sets, and the way I read it is we have a set for debtors, not bankruptcy debtors, but student loan debtors who are in default but not in bankruptcy, and that's where I read that. Actually, the word that the reg uses is lender. It's an instruction to the lender for what they're supposed to do. Yes. The instruction to the lender for what they're supposed to do, and the way I read that, because there are more specific regulations that specifically address when a student loan borrower is in bankruptcy, and it says those regulations say that you can capitalize the interest of a student loan debtor in bankruptcy, but it doesn't go so far as to say that you can collect for it. The reason is because that would run in direct conflict to the automatic stay under 362, which says you cannot collect. I don't see where that matters to us. They didn't capitalize the pre-petition interest, they don't think, did they? Well, the pre-petition interest would have been included in the claim, which reaches the $36,000. We're talking about post-petition interest, because on the loan. It says outstanding interest incurred on a loan, which I think means pre-petition, doesn't it? If they're going to apply, if what we're talking about here is they're going to apply the payments to principal and interest that comprises the claim, in this case $36,900, that's fine, that's great, that's what we want. What we don't want is a $36,000 claim in bankruptcy, a bankruptcy trustee being required to pay $200 a month toward that claim. I'm missing something here. It looks to me as though the reg gives the lender a power that they did not exercise here, and that would be a whole lot worse for ransom, and that is to charge interest on interest, to capitalize the principal amount plus any unpaid interest as of the petition date, and then to continue accumulating interest on it. And it looks like the other reg says they're required, and this is not permissive, to apply payments, first to fees, then to interest, then to principal. So there must be something else that you're talking about that I'm missing. If you follow through the record and you track the record of what actually happened, the initial claim is $36,900 or thereabouts. Payments, look at the trustee's report of payments made through the plan, payments from the Chapter 13 trustee to Sally May totaled over $11,000. If those payments are being applied solely to the allowed claim, then the remaining balance is what the BAP concluded, $25,000 and change. Ms. Ransom received a bill, and it's in the record, from Sally May saying, you know, after she got out of bankruptcy, she owes over $42,000. So somebody was accruing interest during the period of the bankruptcy, and it would appear that it got and it wound up being an even bigger amount because they weren't, in fact, applying payments on the claim that they were getting every month from the bankruptcy trustee. They were applying them to accruing interest. The principal balance never comes down at all. What's the matter with that? Because of two reasons. Again, it's prohibited by the bankruptcy code. That allows them to collect. I didn't see where it did. All the code says was that they can't make a claim for post-petition interest. I don't understand where anything says that they cannot do what the regulation says they must do, which is apply payments first to interest and principal. I mean, most loans work that way. Your home mortgage works that way. It's just the ordinary way loans work. Yes, that's absolutely correct. Again, there is the distinction of what happens when you're in bankruptcy and when you're not in bankruptcy. Sally Mae just admitted that there is an automatic forbearance when somebody goes into bankruptcy. Automatic stay. No. It's an automatic forbearance. I said there's an automatic stay for the bankruptcy code. Sally Mae just said 10 minutes ago, or whatever it was, that when you go into bankruptcy, Sally Mae is ready to say it's an automatic forbearance. Apparently, maybe that means absolutely nothing because interest was continuing to accrue, and that's permitted, but you're not allowed to take bankruptcy estate property. That's the money that makes its way into the plan and divert it for claims, basically, that are arising post-petition. And that's what they're doing. That's the gist of this. No, no. The point of the automatic stay is so that one creditor can't take the debtor's money at the expense, basically, of the other creditors. They all have to go through the bankruptcy court and share according to the priorities. Absolutely right. Absolutely right. But that's not what was happening here. The other unsecured creditors, their plan payments weren't being applied to interest, while Sally Mae's was being applied to interest. As I understand the argument, again, Sally Mae had mentioned that we did not brief this. It did come up sort of in the oral argument. If it's a non-dischargeable debt, wouldn't that have the effect of discharging it in part? I'm sorry. I didn't quite catch the last part. We know that student loans are a non-dischargeable debt without the undue hardship determination. There was no undue hardship determination, so this is a non-dischargeable debt. It seems to me that it would be discharged in practical effect if payments were not applied to interest first. No, because it all gets to accrue. The interest continues to accrue, and there's a distinction, I guess, between discharging something that has come into being, that is accrued interest, which is what we attempted to do, but that's part of the other argument. Interest on what is the whole point, though? Right. Interest on $1 is less than interest on $2. Yes. But, yeah, absolutely. And if you loan $2 and it's a student loan, you get interest on $2, not on $1, or else it would be treating it as though it was partially discharged. That's one way to look at it. I unfortunately disagree with that. How can you avoid that way of looking at it? Well, remember, we're not making the regular principal payments as it is. Debtor doesn't get to decide what kind of payment they're making. Well, to some degree the debtor does. If the debtor has a $300 plan payment and you have ten creditors, they're all general insecurities, it's supposed to be divided up equally, $30 to each of the creditors in that situation, excluding the trustee's fees. Up to the bankruptcy court. But, I mean, the debtor can't tell a creditor, I'm paying $100 on my $600 a month home mortgage. Apply the $100 to principal. They just don't care what the letter says or what it says on the bottom of the check. It applies to interest. And on a non-dischargeable debt like this, in bankruptcy, I can't see where it would be any different. Well. Explain it. I mean, you know more than I do about bankruptcy. I have continued to explain why that is. And, obviously, I haven't done a very good job because we're looking at, as we've talked about, a claim for the initial amount. And what we're talking about is how do you apply the payments? Do you apply the payments to the claim amount, or do you apply the payments to interest that accrues post-petition first? Because the reg that you're citing to says pay interest collection costs first. But the bankruptcy code says, well, if you can't make a claim for these after accruing, post-petition accruing debts, and you can't get paid if you can't make a claim, and that is can't get paid from the bankruptcy estate, then the bankruptcy estate. Now I get it. That was the missing step. You can't get paid if you don't make a claim. Right, right. You cannot make a claim, and, therefore, you cannot get paid. And the way that it's been addressed to allow Sally Mae and other student loan creditors to be made as whole as possible, even given the circumstance, is they do get to continue to capitalize that interest against the debtor during the plan, and it's not dischargeable, and it's added and collected after the plan, but not during the plan. Let's take another non-dischargeable debt. Say it's a fraud. Now, during the plan, they cannot apply that to interest. They have to apply it to principal, do they? They would apply it towards the claim amount, which would most likely include principal plus pre-petition. That's right. But not post-petition. So then, at the end, for that creditor, after the five-year period, the debts that can be discharged are discharged. And here we sit with this non-dischargeable debt. Now, can they do what is being said? Can they do what their student loan creditors are? Yes, right. I don't know absolutely, but I believe so. And I don't know why you would, in that circumstance, why you would treat the post-discharge collection of a non-dischargeable debt differently. Do we have any cases in that area? I haven't seen any, but then I've been out of the bankruptcy business for quite a few years now. I haven't seen anything in the fraud area. And, quite frankly, I've never had a client where that's been an issue. This non-dischargeability issue is really the only one that I've had. So now I come back to the question, are these student loans different because there is a path for discharge, which is spelled out, which is hardship? I suppose they are different from, say, a non-dischargeable fraud claim in that we do have an avenue under 523A8 to discharge if the debtor can prove hardship. And then there's a number of cases that give the test for hardship. So I do believe that on that point there is a distinction. There is a distinction. I think so, yes. Any further questions? Thank you, counsel. Well, I would ask you one more question. What's your position on this? You've got it in the plan that it is going to be a partial discharge. And Sally May doesn't come back and say, uh-uh, I can't do that. Are they bound by what the plan says? Well, that's my next argument. You don't get two 20-minute arguments. You get one, and it's ending. This is my question. Oh, of course you're going to answer the question, but you said next argument. So the answer is, if I'm just about done, then period, end of story, then the answer is yes. Sally May is bound by it, and there's a two-part analysis. I'll sum it up very quickly since I'm now out of time. But one, if due process has been met under ANAWALI, which one is either you file an adversary proceeding to determine hardship or the plan language is sufficiently clear to put the creditor on notice that we would be attempting to modify their rights through this discharge. Now you get a question from me, too, because you said or. But I thought ANAWALI said both those elements had to be present for due process. I don't read ANAWALI that way, and I don't believe that the BAP in this case read ANAWALI that way, because first the BAP said that there was no adversary proceeding filed. There was no summons and complaint filed to achieve due process in that manner. And then they spent a large amount of time in its opinion stating how reportedly unclear my plan was so that nobody could have received enough notice to know what I was doing. So I read it differently. I read it there being two different ways to achieve due process. And the bankruptcy court here, I believe, read it the same way. They said the plan was clear and dealt with the issue, and I believe the bankruptcy court was correct, obviously. And so then to just finally wrap up on your question is after you've met due process, and assuming you have met due process, then I believe Pardee would address the issue of a confirmed plan where there is no objection and or no appeal of the plan, even if it contains an impermissible provision. It is binding under 1327A and res judicata, and it's final. And Sally May should be bound. And that's my position on that. Anything further? Thank you, counsel. I'll address any further questions you might have and also try to get at this. We're pronouncing it ANAWALI. The language from ANAWALI, I'll just read it, and we can see if we can agree on what it means. It says, Although confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought before an adversary proceeding or not sufficiently evidenced in the plan to provide adequate notice to the creditor. As I read it. Read that once again. Okay. Although confirmed plans are res judicata to issues therein, the confirmed plan has no preclusive effect on issues that must be brought by an adversary proceeding or were not sufficiently evidenced in the plan to provide adequate notice to the creditor. It's an or in there. Right. The confirmed plan has no preclusive effect on one or the other. So I think you're understanding it to mean there are two ways that the bankrupt can lose the benefit of res judicata. Either don't give enough notice or don't have an adversary proceeding where you need one. Right. And I think they're reading it to mean that unless they fail both ways, they get res judicata. Right. And frankly, I mean, there aren't very many cases where situations in which a debtor must bring an adversary proceeding to discharge a debt. So we're talking about just a few things here. It's your position that Pardee doesn't really address that issue? Pardee did not address due process. Or whether there's an adversary proceeding required. Can you ask the question again? I'm sorry. Well, does Pardee cover the situations where an adversary proceeding is necessary? Yes, it does. Pardee factually is on point here. Does anyone have any further questions for me? This is not an easy case. No. It has some very nuanced issues, and have fun with it.  I have nothing further. Thank you, Your Honor. Thank you, Counsel. Ransom versus Sally May is submitted. We are adjourned until 9.30 tomorrow morning.
judges: Fletcher, Kleinfeld, Gould